* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and conclude as matters of law the following, which were entered into at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On August 10, 2005, plaintiff was an employee of defendant-employer.
 3. The carrier on the risk is Zurich North America Insurance Company. *Page 2 
4. Plaintiff alleges that on August 10, 2005, she sustained a compensable low back injury by accident arising out of and in the course of her employment with defendant-employer.
5. Plaintiff last worked at defendant-employer on May 29, 2006.
6. Plaintiff's average weekly wage is $510.79, which yields a weekly compensation rate of $340.54.
 * * * * * * * * * * * STIPULATED EXHIBITS
1. Stipulated Exhibit 1 — Plaintiff's medical records consisting of 53 pages;
2. Stipulated Exhibit 2 — Commission proceedings consisting of 14 pages;
3. Stipulated Exhibit 3 — Physical therapy reports consisting of 44 pages; and
4. Stipulated Exhibit 4 — Medical case management records consisting of 16 pages.
 * * * * * * * * * * * ISSUES
1. What is the nature and extent of plaintiff's disability, if any, resulting from her August 10, 2005 lifting incident at work?
2. Did plaintiff unjustifiably refuse suitable employment made available to her?
 * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years of age. She had completed the ninth grade of high school and had obtained a high school equivalency certificate by passing the General Educational Development Test (GED) in 1993. *Page 3 
2. On October 7, 2004, plaintiff commenced work with defendant-employer as a full-time cook for approximately 107 residents, working approximately 40 hours per week. At the hearing before the Deputy Commissioner, plaintiff testified that her duties included standing and walking, frequent bending and lifting objects up to approximately 80 pounds. Plaintiff further testified that she did not have any difficulty performing her work duties with the exception of occasional low back pain for which she took Tylenol.
3. On August 10, 2005, plaintiff sustained a compensable low back injury when she squatted down to pick up a box of frozen hamburger from the floor. As she testified, she lifted the box about one foot off the floor and felt a pop in her back, which radiated down her legs. Plaintiff attempted to pull the box toward the freezer, when she felt burning low back pain. Plaintiff was unable to continue working, called for assistance and immediately reported the incident to her supervisor, Dickie Hutchins.
4. That same day, plaintiff presented to the office of her primary care physician and was treated by Dr. Susan Yuson, who diagnosed lumbar strain with right leg radiculopathy and released plaintiff from work. On Friday, August 12, 2005, plaintiff presented to Dr. John T. Williams, her primary care physician, who noted improvement but kept plaintiff out of work through August 16, 2005. 5. On August 17, 2005, plaintiff returned to work for defendant-employer in her same position as a full-time cook. Plaintiff continued to experience back pain and on October 31, 2005, defendant-employer arranged for plaintiff to see Dr. Lauren M. Spillmann, an occupational medicine specialist, at Concentra Medical Center. Dr. Spillmann diagnosed lumbar strain, prescribed pain medication, physical therapy three times per week for one to two weeks, and restricted plaintiff to no lifting over 20 pounds and no pulling or pushing over 20 pounds. *Page 4 
6. On November 21, 2005, plaintiff began physical therapy. Physical therapist, Emily Williams noted plaintiff's chief complaints to be low back pain that radiates to both sides as far as the ankle, which was exacerbated by standing and lying down. Ms. Williams noted that plaintiff's examination was consistent with the medical diagnosis of lumbar strain.
7. Plaintiff continued to work for defendant-employer and she testified that she still had to lift weight in excess of the twenty-pound restriction recommended by Dr. Spillmann. As plaintiff's symptoms failed to improve, Dr. Spillmann recommended an MRI and a referral to an orthopedic surgeon.
8. On December 16, 2005, the MRI was performed, which revealed that the disc at L4-5 showed "some desiccation signal intensity changes with an annual fissure in the midline posteriorly and associated with an annular bulge." The remainder of the lumbar spine disc spaces appeared normal.
9. On December 30, 2005, plaintiff presented to a physician's assistant, Richard W. Trombley, at Concentra Medical Centers, who reduced her work restriction to "no lifting over 10 pounds and no pushing or pulling over 10 pounds. 10. On February 1, 2006, plaintiff presented to Dr. Thomas L. Spangler, an orthopedic surgeon, who opined that plaintiff "most likely has fibromyalgia" but noted bilateral posterior hip pain that plaintiff dated to her lifting injury in August 2005. Dr. Spangler prescribed medication and gave plaintiff a facet injection.
11. On February 9, 2006, defendants assigned a rehabilitation nurse, Carlene Compton, to provide medical case management services. Nurse Compton met with Dr. Spangler who recommended that plaintiff adjust her work schedule to three 12-hour days in order to allow time for physical therapy. *Page 5 
12. On February 15, 2006, Dr. Spangler prescribed a TENS unit to help relieve plaintiff's posterior hip and back pain. On March 7, 2006, Dr. Spangler prescribed an additional six weeks of physical therapy, twice per week and on March 15, 2006, continued the 10 pound lifting restriction.
13. On April 7, 2006, plaintiff returned to her family physician, Dr. Williams who noted that she continued to have back pain and is wearing her back brace.
14. On April 28, 2006, plaintiff again presented to Dr. Spangler and reported continued pain in her right posterior hip. Plaintiff complained that she was only sleeping three hours per night due to pain. Dr. Spangler recommended that plaintiff begin a walking or exercise bicycle routine to help her sleep and prescribed physical therapy for another six weeks, two times per week. Dr. Spangler further recommended that plaintiff continue to work three 12-hour days in order to be able to participate in physical therapy. 15. At the hearing before the Deputy Commissioner, plaintiff testified that on May 17, 2006, she dropped a tray of glasses at work and felt a sharp pain in her back. Plaintiff further testified that the pain in her lower back and legs continued to be so intense that she was hardly able to work. Despite her continuing low back pain, plaintiff continued to work in her regular position until May 29, 2006. At that time, plaintiff testified she was unable to continue to work due to her back pain and stopped working, thinking her pain would improve. Defendants were unable to accommodate plaintiff within the light duty restrictions assigned by Dr. Spangler.
16. On June 2, 2006, plaintiff returned to Dr. Spangler with complaints of back pain. Plaintiff reported that lifting at work is painful and that she has to lift weight in excess of her restrictions because there is not always someone available to assist her. Plaintiff also reported that she had been falling quite a bit. Upon examination, Dr. Spangler opined that plaintiff *Page 6 
continued to have significant back and posterior hip pain at the sacroiliac joints. Dr. Spangler continued plaintiff's work restriction of no lifting greater than 10 pounds and opined that if defendant-employer cannot find suitable work, plaintiff will have to be released from work. He further opined that in the long term, plaintiff might need to look for lighter work due to her failure to respond to appropriate conservative treatment. On that same date, Dr. Spangler wrote a release, "Pt out of work 5/31/06."
17. On June 14, 2006, plaintiff presented to Dr. O. Del Curling, Jr., a neurosurgeon, for an independent medical evaluation. Dr. Curling opined that plaintiff was not at maximum medical improvement and expected plaintiff to be able to function safely in a light duty capacity (20 pounds maximal occasional lifting) with avoidance of repetitive bending, twisting and prolonged station.
18. After her appointment with Dr. Spangler on June 2, 2006, plaintiff testified that she contacted Jamie Sparks, the Executive Director for defendant-employer, who told her there was no work available within her restrictions, she should remain home until further notice and that someone else had been assigned her duties. Ms. Sparks also testified at the hearing before the Deputy Commissioner and confirmed to what plaintiff had testified. In addition, in a note dated June 2, 2006, Ms. Sparks wrote,
 Liz called to tell us that her dr. had put her on a 10 pound lifting limit with no pushing or pulling. After discussing this w/mgmt I informed Liz that currently we had no positions available that would accommodate her restrictions. I asked her to call us back when her restrictions were lifted.
19. Ms. Sparks testified that she would be willing to work with plaintiff again in trying to get her back to work, as plaintiff was a good employee. *Page 7 
20. Regarding plaintiff's return to work, Carlene Compton, the rehabilitation nurse recorded that plaintiff had been excused from work by defendant-employer as no work was available within the restrictions provided by Dr. Spangler.
21. On July 19, 2006, plaintiff's counsel wrote defendants to inquire whether a light duty position would be available for plaintiff to try but did not receive a response.
22. When plaintiff presented to Dr. Spangler again on July 21, 2006, he opined that she was about 20% improved due to the fact that she had not been working. Dr. Spangler recommended continued physical therapy and advancing to a work-conditioning program prior to a functional capacity evaluation for permanent restrictions. Dr. Spangler noted that plaintiff had lumbar degenerative disc disease and posterior hip pain, greater on the left side. He opined, "She will definitely need to find new line of work which will have lighter lifting." On August 9, 2006, defendants approved plaintiff's referral to Comp Rehab for more physical therapy and eventual work conditioning. 23. Dr. Spangler opined that when plaintiff lifted the box of hamburgers on August 10, 2005, it was a significant causal factor in her low back pain. In addition, he opined that the August 10, 2005 incident was a significant causal factor in aggravating plaintiff's pre-existing non-symptomatic degenerative disc disease condition at L4-5, characterized by low back pain and bilateral posterior hip pain, causing it to become symptomatic.
24. Although Ms. Sparks testified that she offered plaintiff an aide position assisting the residents, the greater weight of the evidence, including Ms. Sparks' June 2, 2006 note, indicating that there was no employment available for plaintiff within Dr. Spangler's work restrictions, and the lack of response to plaintiff's July 19, 2006 inquiry about a light duty *Page 8 
position indicates, and the Full Commission finds, that defendant-employer did not have suitable employment available for plaintiff.
25. Although plaintiff may have been capable of some work within her restrictions, the Full Commission finds that defendant-employer had none available. Moreover, plaintiff did make a reasonable effort to obtain light duty work with defendant-employer on July 19, 2006, but received no response. Thereafter, plaintiff did not have a reasonable opportunity to conduct a further job search prior the hearing before the Deputy Commissioner on November 29, 2006.
26. Defendants have failed to produce evidence that suitable jobs are available for plaintiff and that she is capable of obtaining one, taking into account her physical limitations.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On August 10, 2005, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer as a result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Because plaintiff's claim was denied, plaintiff has the burden of proving disability, defined as a loss of wage earning capacity.Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). 3. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of *Page 9 
production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
In the present case, although plaintiff may have been capable of some work within her restrictions, defendant-employer had none available. Moreover, plaintiff did make a reasonable effort to obtain light duty work with defendant-employer on July 19, 2006, but received no response. Thereafter, plaintiff did not have a reasonable opportunity to conduct a further job search prior the hearing before the Deputy Commissioner on November 29, 2006.
4. When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra. Defendants have not produced any credible evidence to meet this burden.
5. As a result of plaintiff's compensable injury on August 10, 2005, plaintiff is entitled to temporary total disability compensation at the rate of $340.54 per week commencing May 30, 2006 and continuing until November 29, 2006, the date of the hearing before the Deputy Commissioner. Entitlement to further temporary total disability compensation is reserved for a future determination. N.C. Gen. Stat. § 97-29. *Page 10 
6. As a result of plaintiff's compensable injury on August 10, 2005, plaintiff is entitled to have defendants provide all reasonable medical treatment related to her injury by accident, incurred or to be incurred and as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary total disability compensation at the rate of $340.54 per week commencing May 30, 2006 and continuing until November 29, 2006, the date of the hearing before the Deputy Commissioner. Entitlement to further temporary total disability compensation is reserved for future determination. N.C. Gen. Stat. § 97-29.
2. Defendants shall pay all medical expenses incurred or to be incurred, which are reasonably related to plaintiff's compensable injury by accident on August 10, 2005, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. 3. A reasonable attorney's fee of twenty-five percent of the compensation awarded in paragraph 1 is hereby approved for plaintiff's counsel. 4. Defendants shall pay the costs.
This the ___ day of January 2007. *Page 11 
 S/______________________
 PAMELA T. YOUNG
 CHAIR
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/______________________ DIANNE C. SELLERS COMMISSIONER *Page 1